IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINEETA PRASAD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10-cv-05943 |
| | ) | |
| v. | ) | Judge  Matthew F. Kennelly |
| | ) | |
| ACXIOM CORPORATION, | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Acxiom Corporation ("Acxiom"), submits this Memorandum of Law in support of its Motion for Summary Judgment.  For the reasons explained herein, there are no genuine issues of material fact and Acxiom is entitled to judgment in its favor as a matter of law.

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adusumilli v. City of Chicago,*
   164 F.3d 353 (7th Cir. 1998) ...................................................................24

*Ajayi v. Aramark Bus. Servs.,*
   336 F.3d 520 (7th Cir. 2003) ...................................................................15

*Anders v. Mobil Chemical Company,*
   559 N.E. 2d 1119 (4th Dist. 1990)...........................................................28

*Atanus v. Perry,*
   520 F.3d 662 (7th Cir. 2008) ...................................................................19

*Bahl v. Royal Indem. Co.,*
   115 F.3d 1283 (7th Cir. 1997) ...........................................................16, 17

*Baskerville v. Culligan Int'l Co.,*
   50 F.3d 428 (7th Cir. 1995) .....................................................................23

*Bennett v. Evanston Hospital,*
   184 Ill. App. 3d 1030 ...............................................................................28

*Bio v. Fed. Express Corp.,*
   424 F.3d 593 (7th Cir. 2005) ...................................................................20

*Burlington Indus. v. Ellerth,*
   524 U.S. 742 (1998)...........................................................................18, 19

*Cullen v. Ind. Univ. Bd. of Trs.,*
   338 F.3d 693 (7th Cir. 2003) ...................................................................28

*Duldulao v. Saint Mary of Nazareth Hospital Center,*
   115 Ill. 2d 482...........................................................................................27

*Fallon v. Ill.,*
   882 F.2d 1206 (7th Cir. 1989) .................................................................29

*Flannery v. Recording Indus. Ass'n. of America,* 354 F.3d 632 (7th Cir. 2004) ...........................12

*Forrester v. Rauland-Borg Corp.,*
   453 F.3d 416 (7th Cir. 2006) ...................................................................22

*Gates v. Caterpillar, Inc.*,
    513 F.3d 680 (7th Cir. 2008) ......................................................................20

*Geier v. Medtronic*,
    99 F.3d 238 (7th. Cir. 1996) ...................................................................16, 17

*Grube v. Lau Indus. Inc.*,
    257 F.3d 723 (7th Cir. 2001) ...................................................................15, 18

*Habighurst v. Edlong Corp.*,
    568 N.E. 2d 226 (1st Dist. 1991) ................................................................27

*Herron v. DaimlerChrysler Corp.*,
    388 F.3d 293 (7th Cir. 2004) ......................................................................22

*Hill v. Burrell Communication Group*,
    57 F. 3d 665 (7th Cir. 1995) .......................................................................15

*Ivory v. Specialized Assistance Servs.*,
    365 Ill. App. 3d 544 ...................................................................................28

*Lampe v. Swan Corporation*,
    212 Ill. App. 3d 414 (5th Dist. 1991) ........................................................27

*Lee v. Gas Tech. Institute*,
    2005 U.S. Dist. LEXIS 16460 (N.D. Ill. Jun. 9, 2005) ................................12

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ...................................................................................14

*McPherson v. City of Waukegan*,
    379 F.3d 430 (7th Cir. 2004) .................................................................23, 24

*Moser v. Indiana Dept. of Corr.*,
    406 F.3d 895 (7th Cir. 2005) ......................................................................25

*National R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101, 122 S. Ct. 2061 (2002) .........................................................12

*Oest v. Ill. Dep't. of Corrs.*,
    240 F.3d 605 (7th Cir. 2001) ......................................................................19

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) .....................................................................................23

*Patterson v. Ind. Newspapers, Inc.*,
    589 F.3d 357 (7th Cir. 2009) ......................................................................20

*Radue v. Kimberly Clarke Corp.*,
219 F. 3d 612 (7th Cir. 2000) ...........................................................15

*Rhodes v. Illinois Dept. of Transp.*,
359 F.3d 498 (7th Cir. 2004) ...........................................................25

*Rogers v. City of Chicago*,
320 F.3d 748 (7th Cir. 2003) .................................................7

*Scott v. Sears, Roebuck & Co.*,
798 F.2d 210 (7th Cir. 1986), *overruled in part on other grounds by Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir. 1993) ........................25

*Semerau v. Schiller Park*,
210 Ill. App. 3d 493 .........................................................................27

*Sitar v. Indiana Dept. of Transp.*,
344 F.3d 720 (7th Cir. 2003) ...........................................................26

*Smart v. Ball State Univ.*,
89 F.3d 437 (7th Cir. 1996) .............................................................18

*Springer v. Durflinger*,
518 F.3d 479 (7th Cir. 2008) ........................................................6, 7

*Squibb v. Memorial Medical Center*,
497 F.3d 775 (7th Cir. 2007) ...........................................................25

*Stepney v. Naperville Sch. Dist.*, 392 F.3d 236 (7th Cir. 2004) .................12

*Texas Dep't of Community Affairs v. Burdine*,
450 U.S. 248 (1981) ........................................................................25

*Treadwell v. Office of the Ill. Sec. of State*,
455 F.3d 778 (7th Cir. 2006) ...........................................................25

*Troupe v. May Dep't Stores Co.*,
20 F.3d 734 (7th Cir. 1994) .........................................................14, 15

*Wallace v. SMC Pneumatics, Inc.*,
103 F.3d 1394 (7th Cir. 1997) .........................................................14

*Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333 (7th Cir. 1993) ................24

*Wood v. Wabash County*,
309 Ill. App. 3d 725 (5th Dist. 1999) ...................................27

iii

**STATUTES**

29 U.S.C. § 206(d) ........................................................................................6

29 U.S.C. §§ 626(d)(2), 633(d) ......................................................................12

42 U.S.C. § 2000e-2(a)(1) ..............................................................................14

42 U.S.C. § 2000e-3 ("Title VII") ...................................................................6

Title VII of the Civil Rights Act of 1964 ........................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ..........................................................................................6

# INTRODUCTION

This is an employment discrimination case. Plaintiff Vineeta Prasad, a Data Sales Client Representative, worked for Defendant Acxiom for approximately ten months. Plaintiff was terminated for disregarding her supervisor's clear directive not to contact a client who had previously requested that Plaintiff be removed from working on the client's account. Prior to her termination, Plaintiff had received an Associate Counseling Form from the same supervisor for ineffective teaming, and she also had been previously removed from another account because she demonstrated a continuous inability to work with her team members.

In her First Amended Complaint, Plaintiff alleges race and ethnicity (East Indian) and sex (female) discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-3 ("Title VII"); sexual harassment in violation of Title VII; retaliation in violation of Title VII; breach of contract under Illinois common law; and violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Summary judgment is warranted on Plaintiff's claims because most of the actions of which Plaintiff complains are outside the 300 days within which she was required to file a Charge with the EEOC; she cannot demonstrate she was discriminated or retaliated against, that similarly-situated non-East Indian and male employees were treated more favorably or that Acxiom's legitimate reasons for its actions are a pretext for discrimination or retaliation; she cannot demonstrate that she was sexually harassed; she cannot show the existence of a valid and enforceable contract with Acxiom; and she cannot show that she was paid differently than her male counterparts.

# SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56. At this stage, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts"—she cannot rely on speculation. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quotation omitted). This is the "put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Id.* at 484 (quotation omitted). "In short, summary judgment is warranted where 'a rational trier of fact' could not find for the non-moving party." *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

## SUMMARY OF UNDISPUTED FACTS

### I.     Plaintiff's Employment Background

Plaintiff Vineeta Prasad ("Prasad" or "Plaintiff") was an employee of Defendant Acxiom.   (SOF ¶ 1.)   Acxiom is headquartered in Little Rock, Arkansas with additional locations around the United States.   (SOF ¶ 2.)    Acxiom is in the business of customer information management.  (SOF ¶ 2.)

Plaintiff began working for Acxiom on July 9, 2007 as a Client Representative. (SOF ¶ 7.)  She was interviewed by James Coy ("Coy").  (SOF ¶ 8.)   She was hired by Acxiom and received her offer letter from Coy.  (SOF ¶ 8.)

Plaintiff's offer letter stated that she would report to Coy and be assigned to her home office in the City of Chicago.  (SOF ¶ 9.)   Plaintiff did not work in a business office on a regular basis. (SOF ¶ 9.)   Her job was to sell Acxiom data products to new and existing customers in the high tech vertical.  (SOF ¶ 10.)   She worked for the Data Division of the High Tech Vertical.  (SOF ¶ 10.)   She was responsible for closing sales of data with various accounts, among them, Gateway, Hewlett-Packard ("HP"), and Microsoft as well as others.  (SOF ¶ 11.)

Plaintiff's offer letter stated in Paragraph No. 2 that her Fiscal Year 2008 variable opportunity was 7.5% of recognized revenue on new data deals signed within her defined accounts. (SOF ¶ 12.) Plaintiff's offer letter further stated in Paragraph No. 3 that: her base salary was $90,000; she had a variable opportunity of $20,000; and her total compensation opportunity was 110,000 at 100% attainment. (SOF ¶ 13.)

Coy was Prasad's direct line supervisor. (SOF ¶ 13.) Coy was the head of the Data Division in which Plaintiff worked. (SOF ¶ 14.) John Finnell ("Finnell") was the head of the High Tech Vertical. (SOF ¶ 15.) Finnell did not report to Coy; Finnell and Coy were peers and were on the same level. (SOF ¶ 15.) Donovan took over for Finnel in March 2008. (SOF ¶ 15.) The other Acxiom employees that worked in the Data Sales Group with Plaintiff under Coy were Brent Sinclair, Steven Johnston, Brain Poppe, Anthony Tuffile, Roger Marcus, and Andrew Ketch. (SOF ¶ 16.) Justin Keogh ("Keogh") was Plaintiff's coworker and he reported to Finnell because he was in the high tech vertical. (SOF ¶ 17.)

## A.   Plaintiff's Compensation Plan

Plaintiff received her Compensation Plan from Acxiom at the time she was hired. (SOF ¶ 18.) Section 1.1 entitled "Base Compensation" of Plaintiff's Plan stated:

> Base represents salary that is not directly tied to revenue and profitability attainment. To receive this salary, the associate must appropriately represent and support Acxiom's business interests in all dealings, both internal and external.

(SOF ¶ 19.) Section 1.2 entitled "Commissions" of Plaintiff's Plan stated:

> Commissions reflecting a designated percentage of base pay are earned based on attainment of *fiscal year recognized revenue quotas.* After 100% attainment of annual *quota,* a commission of 7.5% will be paid on any additional revenue generated on assigned accounts. All *net-new data business* is also paid at 7.5% regardless of quota attainment; however, such payments will not result in a reduction of *quota* but will reduce performance *targets.*

Emphasis added. (SOF ¶ 20.)   Section 1.2 entitled "Commissions" of Plaintiff's Plan

3

also states:

> **Commission payout**. Commissions are calculated and paid as a percentage of attainment as outlined in your individual plan worksheet. A year-to-date *attainment floor* of 70% applies, after which commissions are calculated and paid monthly as follows:

| Commission payment % ... | 1% | 29.7% | 50% | 82% | 100% | 100% |
|---|---|---|---|---|---|---|
| ... after reaching 70% YTD | 70.3% | 78.9% | 85% | 94.6% | 100% | 112% |

Emphasis added. (SOF ¶ 21.)

The Commission Plan was confusing to Plaintiff. (SOF ¶ 22.) If the Plan was put in front of her and she was asked whether the Plan indicates that she would receive a commission if she was under a 70% year-to-date attainment floor, she would state, "I don't know." (SOF ¶ 23.)

Plaintiff was asked to state in detail the commissions to which she claims she was entitled and she responded, "I should have been paid the full 7.5% on my Gateway sale for $367,609.36 . . . . " (SOF ¶ 24.) Gateway was an existing customer of Acxiom when she started working. Plaintiff was introduced to people at Gateway after she became employed with Acxiom. (SOF ¶ 25.) Plaintiff believed that she was going to get a commission on the sale of Gateway regardless of whether it was considered a new or existing client. (SOF ¶ 27.)

**B.** **Plaintiff's Removal From the Microsoft Account**

On November 30, 2007, Finnell sent Plaintiff an email regarding her work on the Microsoft Account stating:

> I thought you were asked not to forward these slides to MSFT prior to team review and edit? If so, then this is unacceptable.

> We are trying to demonstrate competency and establish credibility as a consultative partner to MSFT. In my opinion, sending these slides in current form was not helpful. . . .

We have clearly established that John Farmer is on point for the Acxiom team and at a minimum, John should concur and authorize all customer interactions BEFORE they occur.

I appreciate your aggressive pursuit of this opportunity but I must insist that you refrain from direct, unilateral contact with the client and that you work within the team structure that has been established. We all take direction from John where this opportunity is concerned. No exceptions and this is not up for debate.

(SOF ¶ 29.)

On December 13, 2007, in a response email to John Farmer's ("Farmer's") email regarding the scheduling of a meeting with the client Microsoft, Plaintiff stated, "I do not have time to debate." (SOF ¶ 30.) On December 14, 2007, Coy sent Plaintiff an email stating:

After our two hour call last evening and your comments below [referring to Plaintiff's December 13, 2007 email to Farmer], I feel it has become too difficult for you to team and to be objective with the other members of the Acxiom Microsoft Team.

Effective immediately I would like you to turn over everything related to Microsoft to John Farmer and Carla Schwalbert . . . . Please do not have any further contact with Microsoft from receipt of this email.

(SOF ¶ 31.)

### C.    **Plaintiff's March 5, 2008 Associate Counseling Form**

An Associate Counseling Form is a document issued to employees that outlines coaching opportunities for either account managers or client executives. (SOF ¶ 36.) If a Supervisor has concern about an employee's performance, the Supervisor can create an Associate Counseling Form to address the concern for the employee. (SOF ¶ 36.)

On March 5, 2008, Plaintiff received an Associate Counseling Form from her Supervisor Coy. (SOF ¶ 37.) The form indicated that the reason for the session was "ineffective teaming." The Associate Counseling Form issued to Plaintiff states the following in the Comments/Notes of Session section:

<u>Builds trust-based relationships with stakeholders</u>. On a couple occasions we've discussed that you need to listen more on conversations in order to understand the whole picture and not just the data aspect. You have not established a good working relationship with internal Acxiom associates (John Farmer and Justin Keogh) with whom you have to work. When working together, you drive your agenda too much.

<u>Handles situations with diplomacy and tact</u>. In emails you are too direct and abrupt — i.e. on December 14th "I don't have time to debate".

<u>Gives and receives constructive feedback appropriately</u>. When I give you direction you come back defensive and always have excuses. i.e. — Microsoft — you were asked to consider an overall solution, not just a data solution and your response was very defensive. On HP — services has repeatedly (sic) asked for an introduction into the account. You have not made any attempt to help them build a relationship.

(SOF ¶ 38.)

### D.     <u>Events That Lead To Plaintiff's Termination From Acxiom</u>

On Wednesday, April 23, 2008 at 9:52 p.m., Coy sent Plaintiff an email stating that they needed to discuss how a Hewlett Packard ("HP") call went that night, and that there were some fundamental processes that broke down during that call. (SOF ¶ 40.)

On Thursday, April 24, 2008 at 5:47 p.m., Plaintiff sent Coy an email meeting invite for a call with Acxiom's client Karen Zhang of HP, which was scheduled for Friday, April 25, 2008 at 10:30 a.m. (SOF ¶ 41.)

Later in the day on Thursday, April 24, 2008, Coy sent Plaintiff an email in response to Plaintiff's meeting invite explaining to her that she had been taken off the HP Account. (SOF ¶ 42.) The email further stated that it would not be necessary for Plaintiff to join the call scheduled for the following day with Karen Zhang of HP. Coy's email read:

I received a request from Karen Zhang this evening that you be taken off the HP account based on our call last evening. I appreciate your effort up to this point but feel I have not (sic) other recourse but to remove you from the HP account effective immediately. It will not be necessary for you to join on this call.

(SOF ¶ 42.) Plaintiff testified that she understood this email meant for her not to join the call and there was really no reason to call Karen Zhang of HP in the future. (SOF ¶ 43.)

On Friday, April 25, 2008, at 5:20 a.m., Donovan sent an email to Coy which stated, "[P]er our conversation last night, please allow this email to serve as a recap of my dialogue with Karen Zhang at HP about Vineeta." (SOF ¶ 44.) Donovan also stated in that email, "[T]o put it simply, she was asking that Vineeta be removed from the account due to poor performance." (SOF ¶ 44.)

Michael Donovan told Coy that Karen Zhang reported to Donovan that Plaintiff had tried to contact Zhang on Friday, April 25, 2008 at 8:00 p.m. (SOF ¶ 45.) Coy had no reason to doubt what Donovan told him. (SOF ¶ 45.)

Coy terminated Plaintiff's employment with Acxiom effective April 30, 2008 for poor performance and disregarding a directive. (SOF ¶ 46.)

## ARGUMENT

**I. ANY ALLEGED DISCRIMINATORY AND/OR RETALIATORY ACTS OR SEXUAL HARSSMENT THAT OCCURRED MORE THAN 300 DAYS BEFORE PLAINTIFF FILED HER EEOC CHARGE ARE TIME-BARRED.**

Title VII requires a plaintiff to file an EEOC charge within 300 days of the alleged discrimination or harassment. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 122 S. Ct. 2061, 2070 (2002); *Stepney v. Naperville Sch. Dist.,* 392 F.3d 236, 239 (7th Cir. 2004); *Flannery v. Recording Indus. Ass'n. of America,* 354 F.3d 632, 637 (7th Cir. 2004). Discriminatory acts that occurred beyond the 300-day statute of limitations are time-barred. 29 U.S.C. §§ 626(d)(2), 633(d); *Lee v. Gas Tech. Institute,* 2005 U.S. Dist. LEXIS 16460 *3 (N.D. Ill. Jun. 9, 2005). Plaintiff admits that a majority of the discriminatory acts she relies upon to establish her Title VII claims against Acxiom fall outside the 300 day period.

Plaintiff filed her Charge of Discrimination on October 24, 2008; therefore, any alleged discriminatory or retaliatory acts or sexual harassment that occurred on or before **December 29, 2007** are time-barred. Thus, the following alleged acts of discrimination are time-barred:

- Plaintiff's allegation that sometime in October 2007 during a sales rally in Little Rock, Arkansas, John Finnell allegedly said in front of the participants that "no one with a last name like Amirredy could be a leader." Raghu Amireddy was an Indian client at Symantec. (SOF ¶ 47.)

- Plaintiff's allegation that sometime in October and November 2007, John Finnell and Justin Keogh allegedly repeatedly made fun of Indians and they mocked and imitated Raghu Amireddy's Indian accent during weekly Monday conference calls. (SOF ¶ 47.)

- Plaintiff's allegation that sometime in October 2007, during a Sales Conference in Chicago, Illinois. Drew May allegedly suggested that his brother who is a hairdresser "fix [Plaintiff's] hair color" next time she was in Little Rock, Arkansas. (SOF ¶ 54.)

Similarly, the following alleged acts of sexual harassment are time-barred:

- Plaintiff's allegation that sometime in August 2007 in Seattle, Washington, John Farmer allegedly came to a hotel restaurant late one night where Plaintiff was eating. She was not expecting to see him and have him join her at my table so she excused herself and went to her hotel room alone. John Farmer was very rude to her the next morning in the lobby, and he said "Where have you been? I have been waiting for you." (SOF ¶ 54.)

- Plaintiff's allegation that sometime in August 2007, Plaintiff allegedly asked Justin Keogh if he was able to meet with Trey Barrett during his trip to the Little Rock headquarters and Keogh's response was, "No Vineeta, I am not as beautiful as you are". (SOF ¶ 54.)

- Plaintiff's allegation that sometime in October 2007 during a sales rally in Little Rock, Arkansas, Otto Offereins, allegedly told Plaintiff that he "preferred younger women" and asked her if she wanted to have dinner with him. (SOF ¶ 54.)

- Plaintiff's allegation that sometime in November 2007 in Seattle, Washington. Plaintiff allegedly asked Coy if Microsoft client, Rob Auster, was pleased with her presentation. Coy's alleged answer was yes but Auster was disappointed that Plaintiff did not stay for dinner, and Coy further stated, "Vineeta you were the only one Rob wanted to have dinner with." Plaintiff responded, "I don't mix

business with pleasure." (SOF ¶ 54.)

- Plaintiff's allegation that sometime in November 2007 Justin Keogh allegedly told Plaintiff that he did not want her "trampling" around Symantec, a client account. (SOF ¶ 54.)

Likewise, the following alleged acts of retaliation are time-barred:

- Plaintiff's allegation that on November 30, 2007, Finnell punished her by telling her she could not contact Microsoft directly because she complained to Coy that she was offended by Finnell and Keogh's making fun of Indian people and their repeated mocking of Symantec client Ragu Amirredy's Indian accent on Monday weekly team conference calls. (SOF ¶ 55.)

- Plaintiff's allegation that on December 14, 2007, Coy removed her from the Microsoft account because she complained of discrimination the prior day.

Thus, the only alleged adverse action Plaintiff allegedly suffered during the 300 day time period is Plaintiff's alleged denial of her commission payment for the sale of Gateway in January 2008, the issuance of the March 5, 2008 Associate Counseling Form and her termination on April 30, 2008. For the reasons stated below, however, Plaintiff's claims that are premised on those actions also fail.

## II.    PLAINTIFF'S DISCRIMINATION CLAIMS FAIL.

To prevail on her race and ethnicity and sex discrimination claims, Plaintiff must establish she was discriminated against with respect to compensation, terms, conditions, or privileges of employment, because of her race and ethnicity and sex. *See* 42 U.S.C. § 2000e-2(a)(1). Under Title VII, Plaintiff can establish discrimination by using the direct or indirect burden shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prove a case of discrimination under the direct method, Plaintiff must use direct or circumstantial evidence, to create a triable issue of whether the employer's action was discriminatory. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997).

To state a claim for race and ethnicity and sex discrimination under the indirect model, Plaintiff must establish a *prima facie* case by demonstrating that: (1) she is a member of a protected class; (2) her performance met Acxiom's legitimate expectations; (3) despite her performance, she was subject to an adverse employment action; and (4) Acxiom treated similarly-situated non-East Indian or male employees more favorably. *See Grube v. Lau Indus. Inc.*, 257 F.3d 723, 728 (7th Cir. 2001). Only if Plaintiff establishes a *prima facie* case, is Acxiom required to articulate a legitimate, non-discriminatory reason for the adverse employment action. Plaintiff has the ultimate burden of showing Acxiom discriminated against her on the basis of her race and ethnicity and sex. *See Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003). Plaintiff's discrimination claims fail under both methods.

A.     **Plaintiff Cannot Establish Race and Ethnicity and Sex Discrimination by the Direct Method of Proof.**

Plaintiff has no direct evidence of race or ethnicity or sex discrimination. Direct evidence is defined as "an acknowledgement of discriminatory intent by the defendant or its agents." *Hill v. Burrell Communication Group*, 57 F. 3d 665, 667 (7th Cir. 1995). Courts have held that direct evidence "essentially requires an admission by the decision maker that his actions were based on [prohibited factors]." *Radue v. Kimberly Clarke Corp.*, 219 F. 3d 612, 616 (7th Cir. 2000). Plaintiff has no evidence of admissions by her Supervisors Jim Coy or John Finnell that their decisions regarding her employment were made because of her race and ethnicity or sex.

Circumstantial evidence consists of "suspicious timing, ambiguous statements oral or written behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Troupe*, 20 F.3d at 736.

Plaintiff has no circumstantial evidence of sex discrimination. Plaintiff alleges that sometime in October 2007, that during a Sales Conference in Chicago, Illinois. Drew May allegedly suggested that his brother who is a hairdresser "fix [Plaintiff's] hair color" next time she was in Little Rock, Arkansas. (SOF ¶ 54.) That remarks has nothing to do with Plaintiff's sex. Regardless, as a preliminary matter, the remark was made outside the 300 day period within which Plaintiff was required to file her Charge and thus it is not actionable. Moreover, that remark is also not evidence of discrimination as a matter of law. It is well established that stray workplace remarks "cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question." *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) (*citing McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686-87 (7th Cir. 1991)). If the remark was made long before the firing, Plaintiff must show that it was related to the decision to discharge. *See Geier v. Medtronic*, 99 F.3d 238, 242 (7th. Cir. 1996) (requiring a casual nexus between remark and firing). Plaintiff cannot show that the alleged October 2007 stray remark is proximate or related to the decision to terminate her on April 30, 2008. Thus, Plaintiff must prove her sex discrimination by using the indirect method.

Although Plaintiff alleges some remarks made by Finnell and Keogh show race and ethnicity discrimination, they do not. Specifically, Plaintiff alleges that sometime in October 2007 during a sales rally in Little Rock, Arkansas, Finnell allegedly said in front of the participants that "no one with a last name like Amirredy could be a leader"; and (2) that sometime in October and November 2007, Finnell and Keogh allegedly repeatedly made fun of Indians and they mocked and imitated Raghu Amireddy's Indian accent during weekly Monday conference calls. (SOF ¶ 55.) Even if these alleged remarks were made, they do not constitute evidence of race or ethnicity bias. Those alleged remarks were made outside the 300 day period

within which Plaintiff was required to file her Charge and thus they are not actionable. Moreover, those alleged remarks amount to insufficient evidence and are nothing more than stray remarks that Plaintiff cannot show are either proximate or related to the employment decisions in question. *Bahl*, 115 F.3d at 129 (*citing McCarthy*, 924 F.2d at 686-87). Those alleged remarks were made long before the decision to terminate Plaintiff and thus no causal link can be shown. *See Medtronic*, 99 F.3d 238, 242 (7th. Cir. 1996) (requiring a casual nexus between remark and firing).

In sum, Plaintiff cannot provide direct or circumstantial evidence to show that Acxiom discriminated against her on the basis of her race and ethnicity or sex. Because Plaintiff cannot establish discrimination under the direct method of proof, she must rely on the indirect method to attempt to establish her discrimination claims.

**B.     Plaintiff Cannot Prove Race and Ethnicity and Sex Discrimination Using The Indirect Method of Proof.**

Plaintiff cannot establish a *prima facie* case of race and ethnicity and sex discrimination under the indirect method because she cannot establish that: (1) she was performing her job according to Acxiom's legitimate expectations; (2) that the majority of the actions of which she complains amount to adverse actions; or (3) that similarly-situated non-East Indian or male employees were treated more favorably. Furthermore, Plaintiff cannot show that Acxiom's legitimate business reasons for its actions are a pretext for discrimination.

**1.     Plaintiff was not performing up to Acxiom's legitimate expectations.**

Plaintiff was not performing her job according to Acxiom's legitimate expectations. On November 30, 2007, Finnell sent Plaintiff an email reprimanding her for sending things to a client without proper approval. (SOF ¶ 29.) On December 14, 2007, Coy removed Plaintiff from the Microsoft Account because she failed to work effectively with the

other team members on the account and she kept pushing her own agenda. (SOF ¶ 31.) Prior to her termination, on March 5, 2008, Plaintiff had received an Associate Counseling Form from Coy for ineffective teaming. (SOF ¶ 37.) Even Acxiom's own client, Karen Zhang of HP, recognized that Plaintiff was performing poorly and asked that she be removed from the account. (SOF ¶ 42.)

**2. The majority of the acts of which Plaintiff complains are not adverse actions.**

Plaintiff alleges she can show that Acxiom discriminated against her on the basis of her race and ethnicity and sex based on the following allegations: (1) she was terminated (SOF ¶ 49 .); (2) she was denied a 7.5% commission payment on a sale relating to Gateway (SOF ¶ 48.); (3) she received an Associate Counseling Form (SOF ¶ 37.); (4) she was removed from the Microsoft and Hewlett Packard Accounts (SOF ¶¶ 31, 42.); and (5) Coy allegedly wrote her up in an email on April 23, 2008. The actions in numbers (3) – (5) above are not tantamount to adverse employment actions as a matter of law. Additionally, Plaintiff was not eligible for a 7.5% commission on the sale relating to Gateway, so she did not suffer and adverse employment action when she did not receive one. Thus, to the extent Plaintiff's claims are based on any of those alleged acts, she cannot establish a *prima facie* claim of discrimination.

Not everything that makes an employee unhappy is an actionable adverse action. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).

Plaintiff's March 5, 2008 Associate Counseling Form or alleged April 23, 2008 "write up" from Coy do not constitute adverse employment actions. The Seventh Circuit has

repeatedly held that verbal and written warnings and reprimands are not tantamount to adverse employment actions. *See, e.g., Grube*, 257 F.3d at 729 (reprimands and negative performance appraisals, unaccompanied by some tangible job consequence, do not constitute adverse employment actions). It is well-settled that warnings do not constitute adverse employment actions unless they carry with them some "immediate consequence . . . such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities." *Oest v. Ill. Dep't. of Corrs.*, 240 F.3d 605, 613 (7th Cir. 2001); *Atanus v. Perry*, 520 F.3d 662, 675 (7th Cir. 2008) (holding that "letter of instruction" was not adverse employment action).

Similarly, Plaintiff's allegation that she was removed the Microsoft and Hewlett Packard accounts does not constitute an adverse employment action. Those actions do constitute a significant change in her employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Ellerth*, 524 U.S. 742.

Furthermore, Plaintiff did not suffer an adverse employment action when she did not receive a 7.5% commission on the sale relating to Gateway, because she was not eligible to receive one. Both the Compensation Plan and Plaintiff's offer letter make clear that Plaintiff would receive 7.5% commission after 100% attainment or on new business. (SOF ¶ 20.) The Compensation Plan reads: After 100% attainment of annual *quota,* a commission of 7.5% will be paid on any additional revenue generated on assigned accounts. All *net-new data business* is also paid at 7.5% regardless of quota attainment. (SOF ¶ 20.) Similarly, Plaintiff's offer letter reads: her Fiscal Year 2008 variable opportunity will be 7.5% of recognized revenue on new data deals signed within her defined accounts. Plaintiff admits that she was confused about her

Compensation Plan. (SOF ¶ 22.) She also admits that Gateway was not a new client and that she had been introduced to the people at Gateway at the time she was hired. (SOF ¶ 25.) Plaintiff did not receive a 7.5% commission on the Gateway sale because Gateway was not new business as required under her Compensation plan as explained to her in her offer letter. Therefore, Plaintiff did not suffer an adverse employment action when she did not receive a 7.5% commission on the Gateway Account.

### 3. Similarly-Situated Employees Were Not Treated More Favorably.

Even if Plaintiff could establish she was meeting Acxiom's legitimate expectations—which she cannot—her race and ethnicity and sex discrimination claims also fail because she cannot demonstrate that others outside the protected classes were treated better than her. It is up to Plaintiff to find others who are directly comparable in all material respects.

Plaintiff cannot show she was similarly situated to any other employee. To be similarly situated, another employee must be "directly comparable in all material respects." *Sublett John Wiley & Sons*, 463 F.3d 731, 740, *quoting Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004). Factors to consider include whether the employees: (1) had the same job description; (2) were subject to the same standards; (3) had comparable experience, education, and other qualifications; and (4) were subject to the same supervisor. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005). The Plaintiff's burden "includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) (citations omitted).

Plaintiff claims that her Supervisors Coy, Finnell and Farmer were paid a commission on her Gateway sale but she was not. (SOF ¶ 50.) However, her Supervisors are

not comparable to Plaintiff as a matter of law. Plaintiff's Supervisors hold different job titles, perform different duties, require different experience and qualifications and are supervised by different people higher than Plaintiff. Also, Plaintiff's Supervisors were compensated differently than the employees that worked under them. Plaintiff claims that other employees in her group received her commission on a Microsoft sale but she admitted that she does not know who got her commission, so her claim is purely speculative. (SOF ¶ 48.)

Moreover, Plaintiff admitted that a woman, Dana Joffey, indeed got paid her commissions, and Plaintiff did not know whether Joffey ever had any issues receiving commission payments. (SOF 28.) Additionally, Carla Schwalbert, another woman and Plaintiff's friend, was not removed from the Microsoft Account like Plaintiff because she did exhibit the same misconduct as Plaintiff. (SOF 31-32.)

Furthermore, Plaintiff can point to no similarly-situated non-East Indian or male employee who engaged in comparable misconduct. Plaintiff can point to no similarly-situated non-East Indian or male employee who had to be removed from an account for failing to get along with other team members, that was issued an Associate Counseling Form for ineffective teaming, that was told not to contact a client who requested that she be removed from an account, but did so anyway and who was not terminated. Thus, Plaintiff cannot identify a single similarly situated employee who was treated more favorably than her.

Therefore, Plaintiff cannot establish a *prima facie* case of discrimination because she cannot establish that (1) she was performing up to Acxiom's legitimate expectations, (2) that all the actions she complains of constitute adverse employment actions, or (3) that Acxiom treated similarly situated non-East Indian or male employees more favorably. For each of these reasons, Plaintiff fails to establish a *prima facie* case of race and ethnicity and sex

discrimination.

**4.    Plaintiff cannot show Acxiom's legitimate business reasons are a
pretext for discrimination.**

Even if Plaintiff could establish a *prima facie* case of discrimination based on her
race and ethnicity or sex, which she cannot do, Plaintiff cannot demonstrate that any of
Acxiom's proffered reasons for its actions with respect to her are a pretext for discrimination.
Plaintiff must show that Acxiom's reason for each alleged unlawful employment action is "a
dishonest explanation, a lie rather than an oddity or an error." *Herron v. DaimlerChrysler Corp.*,
388 F.3d 293, 299 (7th Cir. 2004).   Indeed, "[p]retext does not mean simply a mistake, but
instead a lie, 'specifically, a phony reason for some action.'" *Id.* (quoting *Johnson v. City of Fort
Wayne*, 91 F.3d 922, 931 (7th Cir. 1996)).  Furthermore, courts will not "sit as a super-personnel
department that reexamines an entity's business decisions and reviews the propriety of those
decisions." *Id.*   "[N]o matter how mistaken the firm's managers, Title VII does not interfere."
*Id., quoting Wernsing Dep. of Human Services*, 427 F.3d 466, 468 (7th Cir. 2005)("[a]bsent any
evidence of discrimination, this court will not comment on the termination procedures. . . .").  "If
[the employer's proffered reason] is the true ground and not a pretext, the case is over."
*Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

The record evidence shows that Acxiom's reason for terminating plaintiff was not
"a dishonest explanation or a lie."   Acxiom terminated Plaintiff's employment because she
willfully disregarded a directive from her Supervisor that she not contact a client that specifically
requested that she be removed from working on that client's account due to her poor
performance.  (SOF ¶ 46.)  Acxiom's reason for discharging Plaintiff is particularly legitimate
given the fact that Plaintiff had previously received an Associate Counseling Form and had

previously been removed from another account due to her inability to get along with her team members. (SOF ¶ 29, 37.)

Plaintiff has no evidence that Coy's decision to terminate her was based on her race or ethnicity or sex, and not on the fact that she twice needed to be removed from a client account and willfully disregarded his clear directive to cease contact with a client that requested that she be removed due to her poor performance. As a result, Plaintiff has no evidence of pretext that would call into question Acxiom's legitimate reasons for all its actions. As a result, Plaintiff's race and ethnicity and sex discrimination claims fail.

## III.   PLAINTIFF CANNOT SHOW SHE WAS SEXUALLY HARASSED.

Plaintiff's claim that she was sexually harassed is meritless. Title VII is "not designed to purge the workplace of vulgarity," *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995), nor is it a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). To prove actionable harassment, Plaintiff would have to show: (1) She was subjected to unwelcome harassment and the alleged harassment was because of her sex; (2) the harassment was severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive working environment; and (3) there is a basis for employer liability. *See McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004).

As a preliminary matter, as explained above, the majority of Plaintiff's sexual harassment claims fall outside the 300 days within which Plaintiff filed her Charge and thus are not actionable. The only two alleged claims that fall within the 300 day period and could be actionable are Plaintiff's allegations that: (1)  Sometime in January 2008 during weekly conference calls, Coy allegedly suggested that Plaintiff set up a client prospect, Anna

Janowski at Motorola, with Justin Keogh. Plaintiff allegedly responded, "I thought Justin was married," and Coy's response was "No, not when Justin is Elvis" and then Coy and Keogh started laughing; and (2) Sometime in March 2008, Keogh repeatedly called Plaintiff "baby" during weekly calls. Nonetheless, under the aforementioned test, Plaintiff's claim fails because she cannot show that she was subjected to unwelcome harassment and that the alleged harassment was because of her sex or that the harassment was severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive working environment.

### A. Plaintiff Was Not Subjected to Unwelcome Harassment Because of her Sex.

Plaintiff cannot show that the two events of which she complains resulted because of her gender. As such, her sexual harassment claim fails.

### B. The Alleged Conduct is Neither Severe Nor Pervasive Enough to Constitute a Hostile Work Environment To Support A Sexual Harassment Claim.

In addition to not being conduct "because of" her sex, Plaintiff cannot show that the alleged conduct of which she complains created a hostile work environment. (SOF ¶¶42-45). To do so, she must show that harassing conduct was "so severe or pervasive as to alter the conditions of employment." *McPherson*, 379 F.3d at 437-38, *quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). Assuming, *arguendo*, that Plaintiff's events of alleged "sexual harassment" occurred as she states, these comments, conversations and events falls far short of the sort of "severe or pervasive" conduct that "a reasonable person would find hostile or abusive." *Id.* The conduct to which Plaintiff was allegedly subjected, when viewed under the totality of the circumstances, does not rise to the level of actionable sexual harassment. The Seventh Circuit has rejected hostile environment claims based on conduct much more severe or pervasive than the alleged conduct at issue here. *See, e.g., Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir. 1998) (co-workers' teasing of plaintiff, sexual jokes aimed at plaintiff,

incidents of touching plaintiff's arms and buttocks did not suffice to support a hostile environment sexual harassment claim); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (holding that supervisor's calling plaintiff "dumb blond," several incidents of unwanted touching, attempted kissing, placing "I love you" signs in the work area, and asking for dates did not create a hostile work environment); *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 213 (7th Cir. 1986) (holding that lewd comments and slap on the derriere were insufficient to create hostile work environment), *overruled in part on other grounds by Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir. 1993). The conduct Plaintiff claims occurred does not come close to this standard, and therefore Acxiom is entitled to summary judgment in its favor.

## IV. PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW.

Under Title VII, to prove her retaliation claim, Plaintiff must use either the direct or indirect method. *See Moser v. Indiana Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005). Under the direct method, Plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two. *See Squibb v. Memorial Medical Center*, 497 F.3d 775, 786 (7th Cir. 2007). For the reasons stated above, Plaintiff cannot show that she suffered an adverse action other than her termination. Even still, Plaintiff cannot show that her termination was causally connected to any alleged complaints she made. Thus, Plaintiff's retaliation claim fails under the direct method because she cannot show a causal connection between the alleged complaints she made and an adverse employment action.

Under the indirect method, Plaintiff must first establish a *prima facie* claim by establishing: (1) she engaged in statutorily protected activity; (2) she performed her job according to Acxiom's legitimate expectations; (3) she suffered an adverse action; and (4) she was treated less favorably than similarly-situated employees who did not engage in statutorily

protected activity. *See Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). If Plaintiff proves a *prima facie* case under the indirect method, Acxiom must offer a non-retaliatory reason for its actions and, then, Plaintiff must attempt to establish pretext. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Treadwell v. Office of the Ill. Sec. of State*, 455 F.3d 778 (7th Cir. 2006). If Acxiom does so, the burden then shifts back to Plaintiff to show that the proffered reason is pretextual. *See Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). While the burden of production shifts between the parties under this method, "the burden of persuasion rests at all times on the plaintiff." *Id.*

**A.     Plaintiff Was Not Performing To Acxiom's Legitimate Expectations.**

Under the indirect method, Plaintiff's retaliation claims fail because, as explained above, Plaintiff was not performing her job according to Acxiom's legitimate expectations at the time of her termination.

**B.     Plaintiff Cannot Identify A Similarly-Situated Employee Who Was Treated More Favorably.**

As with her discrimination claims, since Plaintiff cannot identify a similarly-situated employee who did not engage in protected activity and who was treated more favorably, her retaliation claims fail. Plaintiff cannot point to another employee with similar performance issues who engaged in similar misconduct but who was treated more favorably. As such, under the indirect approach to establishing retaliation, Plaintiff's claims fail.

**C.     Plaintiff Can Show That Acxiom's Non-Retaliatory Reason For Terminating Plaintiff's Employment Was Pretextual.**

It cannot be disputed that Acxiom had legitimate, non-retaliatory reasons for terminating Plaintiff's employment as a result of her work performance.   There is no evidence to

establish that Acxiom's proffered reasons for her termination are pretextual. Accordingly, Plaintiff cannot maintain a cognizable claim of retaliation.

## V.     PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW.

Acxiom's Compensation Plan contains a clear disclaimer reflecting the absence of a contractual relationship between Plaintiff and Acxiom. (SOF ¶ 63.) It is well established in Illinois that the presence of a disclaimer in an employer's handbook or policy explicitly stating that nothing in the company's policies and procedures is meant to create a contract of employment between the employer and employee, necessarily defeats the "clear promise" required to maintain a successful breach of contract claim based. *Habighurst v. Edlong Corp.,* 568 N.E. 2d 226, 228 (1st Dist. 1991) ("The weight of authority in this State has held the existence of disclaiming language in an employee handbook to preclude the formation of a contract). For a policy to create contractual rights, it must satisfy the general contractual perquisites, including an offer, acceptance, and consideration. *Semerau v. Schiller Park*, 210 Ill. App. 3d 493; 569 N.E.2d 183 (1st. Dist. 1991). Therefore, the following requirements must be met in order for an employee manual or other policy statement to create enforceable contractual rights:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 490; 505 N.E.2d 314 (1987)[1]. Once all of the three conditions are met, then the employee's continued work constitutes consideration for the promises contained in an employer's policy, and a valid contract is formed. *Id.*

Here, Plaintiff admits that she considers her Compensation Plan to be the "contract" in which Acxiom breached when it allegedly failed to pay her commission pursuant to the Plan. (SOF ¶ 62.) The Plan, however, provides an express disclaimer which states the following:

> **This plan does not** alter an associates at-will status, nor does it **create, imply or mean to imply a term of employment or a contract** for continued employment.

(SOF ¶ 63.) (Emphasis added)

The express disclaimer in Acxiom's Compensation Plan is of the type that has been recognized by Illinois courts as precluding contract formation because the disclaimer negates any possible promissory intent. *See Ivory v. Specialized Assistance Servs.,* 365 Ill. App. 3d 544; 850 N.E. 2d 230, 233 (1st Dist. 2006) (affirming trial court's dismissal of employee's breach of contract action because the employee manual contained a clearly worded disclaimer); *Bennett v. Evanston Hospital*, 184 Ill. App. 3d 1030, 1031; 540 N.E. 2d 979 (1st Dist. 1989) (affirming trial court's dismissal of employee's breach of contract action because the employee manual contained a disclaimer that stated "[The Handbook] is not intended to create a contract of employment."); *Anders v. Mobil Chemical Company*, 559 N.E. 2d 1119, 1120 (4th Dist. 1990) (court refused to find that employee manual created a contract where it contained a disclaimer,

---

[1] "Whether an implied in fact contract exists is a threshold question of law." *Wood v. Wabash County,* 309 Ill. App. 3d 725, 728 (5th Dist. 1999). The purpose of the *Duldulao* test is to answer that threshold question. *Lampe v. Swan Corporation*, 212 Ill. App. 3d 414, 416 (5th Dist. 1991).

even though the manual provided for general disciplinary procedures and listed specific acts of punishable misconduct).

## V.     PLAINTIFF'S EQUAL PAY ACT CLAIM FAILS.

To prove a violation of the Equal Pay Act, a plaintiff must first establish a *prima facie* case of unequal pay by showing that: (1) she was compensated differently than a male employee; (2) she and the male employee performed equal work requiring equal skill, effort, and responsibility; and (3) they had similar working conditions. *Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003). Once a plaintiff has established a *prima facie* case, the burden shifts to the employer to show that the pay disparity was justified in one of four ways: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *See Fallon v. Ill.*, 882 F.2d 1206, 1211 (7th Cir. 1989).

Prasad alleges that the denial of receipt of commissions to which she was entitled was a violation of the Equal Pay Act. (SOF ¶ 64.) This bare allegation is insufficient to establish a *prima facie* case of unequal pay. Prasad must establish that she was compensated differently than a male employee; she and the male employee performed equal work requiring equal skill, effort, and responsibility; and they had similar working conditions. There is no evidence to support her bare allegations. Even if she could establish a *prima facie* case, the denial of her commission payment was based on other factors - the unique facts of the sale (it was not new business as Prasad claims) and the fact that it was not included in either her quota or the run rate calculated for Prasad at the commencement of the fiscal year. Moreover, Plaintiff admits that other women were paid commissions. (SOF ¶ 28.)

## CONCLUSION

WHEREFORE, for the above-referenced reasons, Acxiom respectfully requests that this Court grant its motion for summary judgment on all claims brought in Plaintiff's First Amended Complaint.

DATED: October 29, 2012

Respectfully submitted by,
ACXIOM CORPORATION

/s/  Robert E. Arroyo
One of Its Attorneys

Robert E. Arroyo
Sean C. Herring
Jackson Lewis LLP
150 North Michigan Ave.
Suite 2500
Chicago, Illinois 60601
Tel: (312) 787-4949

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on October 29, 2012, he caused a true and correct copy of Defendant's Memorandum of Law In Support of Its Motion for Summary Judgment to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.


<u>    /s/  Robert E. Arroyo    </u>
One of Its Attorneys